*536 Opinión disidente y concurrente emitida por
el Juez Presi-dente Señor Hernández Denton.
“Justice delayed is justice denied.”.
—William E. Gladstone(1)
Disentimos de la decisión tomada hoy por el Tribunal en aquella parte en que pauta que un juez que se demora excesivamente en resolver un caso —en este caso particular por diez (10) años— no viola per se los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B.
Con el mayor respeto a los criterios de los compañeros, entendemos que la decisión del Tribunal ignora el reclamo público de mayor agilidad, laboriosidad y eficiencia en los procesos judiciales. En esencia, la opinión per curiam deja sin efecto el contenido de los referidos cánones en la me-dida en que requieren a todos los jueces y todas las juezas un alto grado de diligencia en la adjudicación de los asun-tos ante su consideración. De nuestra parte, no podemos endosar un curso de acción que, en efecto, constituye un mensaje de tolerancia a la justicia tardía. Ello, pues para este servidor la justicia lenta jamás es justicia.
Ahora bien, en vista de que la queja presentada contra la jueza superior Hon. Carmen Pagani Padró versaba so-bre un asunto novel en nuestra jurisdicción, y en atención al largo historial de la jueza en la Judicatura y a que ésta aceptó que la dilación en controversia fue irrazonable, con-currimos con la determinación del Tribunal de archivar la querella presentada en su contra.
*537 I
Los hechos de la querella de epígrafe se resumen ade-cuadamente en la opinión del Tribunal y en la opinión disidente de la compañera Juez Asociada Señora Rodríguez Rodríguez, por lo que no es necesario exponerlos en su to-talidad nuevamente.
En esencia, no existe controversia de que la jueza Pa-gani Padró se demoró más de diez años en dictar sentencia en el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, Civil Núm. FDP-90-0309, desde que dicha acción judicial quedó sometida en los méritos. A su vez, tampoco existe controversia en cuanto a que ese caso presentaba varias controversias de gran complejidad téc-nica y que el expediente contenía una voluminosa prueba documental y testifical que requería dedicación y tiempo para cualquier adjudicador que la fuera aquilatar de ma-nera responsable, diligente y mesurada.
Luego de múltiples incidentes procesales relacionados con el trámite de la querella de autos, la Comisión de Dis-ciplina Judicial emitió un Informe en el que concluyó que la jueza Pagani Padró no había violado los Cánones de Etica Judicial al demorarse en dictar sentencia en el caso Rodríguez Casillas v. Universidad de Puerto Rico, supra, por un término de más de diez años. Al recomendar la des-estimación y el archivo de la querella, la Comisión adujo que dicho incidente se trató de un evento aislado en su historial profesional, que el referido caso era sumamente complejo por el volumen de prueba documental y testifical, y que del expediente no surgía ninguna gestión adminis-trativa dirigida a dar seguimiento a la resolución del caso luego de que la jueza Pagani Padró fue trasladada a la Región Judicial de San Juan.
Por su parte, el Comisionado Asociado, Ledo. Carlos E. Ramos González, emitió un Voto Explicativo mediante el *538 cual concurrió con esta recomendación. No obstante, este concluyó que aunque la dilación en dictar sentencia pudo haber constituido una violación ética, este caso fue aislado y no era apropiado imponer una sanción dado que este Tribunal aún no se había expresado sobre los contornos disci-plinarios del deber ético de los jueces y las juezas de resolver los casos de manera diligente, ágil y eficiente.
Todas estas circunstancias debieron haber sido sopesa-das por el Tribunal para resolver el caso ante nos, tal como lo hizo la Comisión de Disciplina Judicial en el referido informe. Sin embargo, la mayoría va más allá de los hechos particulares de este caso para cerrar las puertas a que en el futuro tan siquiera se considere una querella contra un juez o una jueza por demorarse excesivamente al dictar sentencia en un caso sometido en los méritos.
II
A. De entrada, reconocemos que este Tribunal no se había pronunciado sobre qué constituye una tardanza in-debida en la adjudicación de un caso a la luz de los Cáno-nes de Ética Judicial. Aún así, no puede haber duda alguna que desde el Preámbulo de ese código deontológico se pro-mueve la eficiencia, la agilidad y la rapidez como preceptos fundamentales para todo juez y toda jueza que ostenta el deber de resolver los casos y las controversias que se pre-senten ante los tribunales del país. Véase Preámbulo, Cá-nones de Ética Judicial, supra; Heftier Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975).
Cónsono con lo anterior, el Canon 4 de Ética Judicial dispone que todos los jueces y todas las juezas están obli-gados y obligadas a cumplir de manera cuidadosa y dili-gente con “las obligaciones administrativas que les impo-nen las leyes y los reglamentos aplicables a la Rama Judicial”. 4 L.P.R.A. Ap. IV. IV-B. En lo pertinente, entre esos deberes se incluye la obligación que tienen los jueces y *539 las juezas del Tribunal de Primera Instancia de resolver los casos contenciosos dentro de los noventa días desde la fecha cuando fueron sometidos para su adjudicación. Véase la Regla 24(a) para la Administración del Tribunal de Pri-mera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II-B, la cual establece, además, que dicho tér-mino podría extenderse de manera razonable solo cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario.
A su vez, el Canon 8 de Ética Judicial impone a los jue-ces y a las juezas el deber de ser “laboriosos, prudentes, serenos e imparciales”. 4 L.P.R.A. Ap. IV-B. Dicho canon también está investido del fin perseguido por ese cuerpo normativo disciplinario de garantizar que los casos y las controversias se resuelvan de manera ágil, efectiva y efi-ciente, como producto del esfuerzo laborioso e incansable de los jueces y las juezas al impartir y administrar la justicia. Con mayor relevancia aún, el Canon 17 de Ética Judicial dispone que “[1] as juezas y los jueces serán diligen-tes en la administración del proceso judicial de los asuntos sometidos ante su consideración y procurarán que las par-tes también lo sean”. (Énfasis nuestro.) 4 L.P.R.A. Ap. IV-B. Con relación a esa norma deontológica dirigida a asegurar que los jueces y las juezas sean diligentes, es menester enfatizar que al aprobar los Cánones de Ética Judicial vi-gentes, se incluyó como apéndice de la Resolución de este Tribunal el siguiente comentario sobre el referido Canon 17:
El Informe que la Comisión Futurista de los Tribunales so-metió a la consideración del Tribunal Supremo en el 2000 re-veló que existe una percepción negativa general entre los ciu-dadanos y las ciudadanas en cuanto al tiempo que toma resolver los casos en los tribunales. La mayoría de las perso-nas entrevistadas señalaron que el tiempo que se toman los procesos judiciales es excesivo. Visión en Ruta al Futuro, In-forme de la Comisión Futurista de los Tribunales, abril de 2000, Vol. II, pág. 19. Para cambiar esa percepción negativa es necesario, de acuerdo con este canon, que las juezas y los jueces *540 eviten toda dilación innecesaria en los procedimientos .... (Én-fasis nuestro.) In re Aprobación Cánones Etica 2005, 164 D.P.R. 403, 434 (2005).
El historial de esa norma disciplinaria refleja un interés particular en atender el asunto de la demora judicial desde el crisol de los Cánones de Ética Judicial. De hecho, el Canon 17 requiere que los jueces y las juezas sean diligentes en la administración de los procesos judiciales, y el impe-rativo ético que se deduce de dicho articulado para estos funcionarios de la Rama Judicial tiene vida propia e independiente.
A modo ilustrativo, el Model Code of Judicial Conduct, promulgado por el American Bar Association en el 2011, también atiende el problema de la demora en la adjudica-ción de un caso o de una controversia desde la óptica de la ética judicial. En particular, la Regla Modelo 2.5(A) esta-blece: “[a] judge shall perform judicial and administrative duties, competently and diligently.” ABA, Model Code of Judicial Conduct, Center for Professional Responsibility, ed. 2011, pág. 19. Dicha regla se acompaña de los siguien-tes comentarios, los cuales ilustran un interés particular en que todos los jueces y las juezas eviten, a modo individual, incurrir en demoras irrazonables al adjudicar o ad-ministrar los asuntos ante su consideración:
[3] Prompt disposition of the court’s business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end.
[4] In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways
*541 that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs. (Énfasis nuestro.) íd., pág. 20.(2)
En este caso nos enfrentamos a unas imputaciones re-lacionadas a la supuesta infracción a estos preceptos éticos por parte de una jueza del Tribunal de Primera Instancia, por haberse demorado más de diez años en resolver un caso ante su consideración. No cabe duda, pues, que esta controversia se enmarca en el contexto de la disciplina judicial bajo la jurisdicción de este Tribunal. Véanse Arts. 6.001 y 6.002 de la Ley Núm. 201 de 22 de agosto de 2003, Ley de Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. secs. 25i y 25j).
B. A la luz de los preceptos deontológicos antes enun-ciados, en el presente caso hubiésemos delineado los con-tornos de una normativa precisa que atendiera la proble-mática de la demora judicial en el contexto disciplinario. De esa forma, se haría valer el deber ineludible de todo juez y toda jueza de administrar la justicia y los procesos judiciales con agilidad, eficiencia y efectividad al amparo de los Cánones de Etica Judicial. Sin embargo, la mayoría del Tribunal sorprendentemente aprovecha esta coyuntura para resolver que una dilación per se en dictar sentencia *542 nunca debería considerarse como una violación a un deber ético que pudiera ser objeto de sanciones.
Según la opinión per curiam, el que un juez o una jueza se demore en disponer de los casos ante su consideración no amerita, por sí solo, que se acuda a la vía disciplinaria. Para que proceda una querella de esta naturaleza bajo la nueva norma pautada por la mayoría, el promovente debe probar las motivaciones indebidas que causen la demora en el trámite de uno o más casos. Ello, independiente-mente de lo irrazonable, innecesaria o excesiva que sea la demora judicial en controversia.
Diferimos de esa apreciación. Nótese que ni el texto ni la intención legislativa plasmada en el Canon 17 de Etica Judicial, supra, se refieren a las motivaciones subjetivas de los jueces o las juezas, o a los factores exógenos que causan la tardanza en resolver un caso o en administrar el proceso judicial en general, sino a la existencia objetiva de una falta de diligencia en el quehacer judicial. La diligen-cia en la administración judicial que exige el referido canon a todos los jueces y las juezas no es otra cosa que la prohibición específica de que medie la negligencia en su desempeño como administradores del proceso judicial.
El término “negligencia” significa descuido o falta de cuidado,(3) por lo que resulta forzoso concluir que ese canon de Ética Judicial persigue prohibir, a modo individual para todos los jueces y todas las juezas, el descuido o la falta de cuidado en la administración del proceso judicial. Ante el señalamiento de una demora excesiva en el proceso judicial, el referido canon requiere que el juez o la jueza de-muestre que la dilación en controversia fue necesaria, ra-zonable y justificada a la luz de la totalidad de las circunstancias del caso. Véase In re Aprobación Cánones Ética 2005, supra. Así, pues, la norma pautada por la ma- *543 yoría del Tribunal en este caso es superflua, en la medida que requiere que se prueben las motivaciones indebidas que ocasionaron la demora judicial en controversia.
Por otro lado, la Mayoría reconoce que podría estar su-jeta a una sanción disciplinaria aquella dilación que esté relacionada razonablemente con un patrón de “incompe-tencia manifiesta” del juez o de la jueza en el desempeño de sus funciones judiciales. Según la normativa pautada por el Tribunal, en esos casos la persona promovente tendría que demostrar que “la demora judicial [en controversia] fue ocasionada por un comportamiento repetitivo que traslufce] una carencia mínima de diligencia en la disposi-ción de los casos”. Opinión per curiam, pág. 530.
Abora bien, el carácter absoluto de ese escrutinio refe-rente a la negligencia crasa del juez o de la jueza que in-curre en un patrón de múltiples demoras judiciales senci-llamente se trata de una causal para la disciplina judicial que establece la Ley de la Judicatura del Estado Libre Aso-ciado de Puerto Rico de 2003, la cual es totalmente inde-pendiente de los Cánones de Etica Judicial imputados en este caso y discutidos en la opinión per curiam. Adviértase que el Art. 6.001 de la referida ley ya dispone que estará sujeto a la imposición de medidas disciplinarias todo juez que:
(1) Incurra en violación a la ley, a los Cánones de [E]tica Judicial, a los Cánones de [Éjtica Profesional o a la reglamen-tación administrativa aplicable, cuando medie una determina-ción final por un foro competente.
(2) Manifieste negligencia crasa, inhabilidad o incompeten-cia profesional en el desempeño de sus deberes judiciales. (En-fasis nuestro.) 4 L.P.R.A. sec. 25i.
Evidentemente, el estándar de “incompetencia mani-fiesta” elaborado por la Mayoría no es más que una reite-ración de la segunda causal para la imposición de medidas disciplinarias contra los jueces y las juezas que surge de la ley de la Judicatura, la cual impone una gran carga proba-toria al promovente de la sanción disciplinaria. Esa negli- *544 gencia crasa no se trata, pues, de la contraparte a la obli-gación que tienen todos los jueces y las juezas de ser “diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración”, obligación que establece el Canon 17 de Etica Judicial, supra.
Por ende, resulta contradictorio concluir que la negli-gencia de un juez o una jueza en resolver prontamente un caso sometido ante su consideración está fuera del alcance del poder disciplinario de la Comisión de Disciplina Judicial, que es el cuerpo llamado a auxiliar a este Tribunal en el ejercicio de su responsabilidad en cuanto a los asuntos de ética judicial. Véanse: Art. 6.005 de la Ley Núm. 201, supra, 4 L.P.R.A. sec. 25m; Regla 12(a) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B.
Ciertamente, al impedir que ni se consideren quejas éti-cas sobre la dilación en la disposición de los casos y reque-rir, para que proceda una querella de esa índole, que se prueben las motivaciones indebidas que causen la demora o la “incompetencia manifiesta” del juez querellado o de la jueza querellada, se desnaturaliza el propósito de los Cá-nones de Ética Judicial en cuanto éstos reglamentan el de-ber de diligencia de los jueces y las juezas en la adminis-tración del proceso judicial. Por lo tanto, discrepamos de la normativa elaborada por la Mayoría para atender la que-rella de autos y desestimar la querella presentada contra la jueza Pagani Padró, según la premisa de que “sería im-propio disciplinar a un miembro de la Judicatura por la mera tardanza en la solución de un caso ante su consideración”. Opinión per curiam, pág. 531. Considera-mos que dicho curso de acción desnaturaliza la intención claramente plasmada en los Cánones de Ética Judicial de 2005 de exigir que todos los jueces y las juezas sean dili-gentes en la administración del proceso judicial.
En vista de que la demora en la emisión de una decisión judicial es contraria al propio concepto de la justicia, hu-biésemos elaborado una normativa ética que promoviera la *545 diligencia adjudicativa entre todos los funcionarios de la Rama Judicial. Así, pues, de forma análoga a lo expuesto por la Juez Rodríguez Rodríguez en su opinión disidente, hubiésemos pautado que una demora en la adjudicación de un caso infringe los Cánones de Etica Judicial si se prueba que la tardanza en dictar la sentencia fue de por sí irrazo-nable o indebida. Para cumplir con ese estándar, no habría que probar que las motivaciones subjetivas del juez quere-llado o de la jueza querellada que ocasionaron la tardanza fueron indebidas, sino que la demora como tal violó el de-ber que tienen todos los jueces y todas las juezas de ser diligentes al administrar el proceso judicial. Canon 17 de Etica Judicial, supra. Por lo tanto, la razonabilidad de una demora se debe determinar a base de la totalidad de las circunstancias, de forma que se vindique el deber fundamental de todos los jueces y todas las juezas de ser labo-riosos y laboriosas, y resolver los casos y las controversias de forma justa, rápida y económica.
En atención a ello, reiteramos nuestra discrepancia con la Mayoría en cuanto despoja a la Comisión de Disciplina Judicial y a este Tribunal de su autoridad para atender querellas fundamentadas en la dilación negligente de un juez o una jueza en dictar sentencia o resolver un caso ante su consideración.
III
Por otra parte, no podemos pasar por alto algunos seña-lamientos que surgen de la opinión per curiam con relación al funcionamiento del Tribunal de Primera Instancia. Para justificar la normativa pautada en este caso, la opinión per curiam se refiere en varias ocasiones a la falta de jueces y juezas, y de recursos en nuestros tribunales, y a la carga pesada de trabajo que tienen los jueces y las juezas como consecuencia del alto volumen de pleitos instados por los ciudadanos.
*546 No obstante, creemos que resulta desenfocado referirse a las características estructurales de nuestros tribunales para pasar juicio sobre la conducta individual de un juez o una jueza que se demoró excesivamente en dictar senten-cia en un caso particular, luego de que este estaba some-tido y pendiente de que se dictara sentencia. En vista de que siempre hemos reconocido que el problema de la de-mora judicial incide sobre la confianza de la ciudadanía en su sistema de justicia, entendíamos necesario promover una normativa ética en este caso que adelantara el objetivo de procesos judiciales efectivos y eficientes como garantía primordial del derecho al acceso a la justicia. Véase F. Hernández Denton, La administración eficiente de la justicia, 77 (Núm. 4) Rev. Jur. U.P.R. 915, 918 (2008). Más allá de los recursos que le asigne la Asamblea Legislativa a la Rama Judicial y las múltiples iniciativas para promover el manejo efectivo y eficiente de los casos que ha desarrollado la Oficina de Administración de los Tribunales, corres-ponde de manera individual a todos los jueces y todas las juezas cumplir con su obligación insoslayable de ser dili-gentes en la administración judicial de los casos ante su consideración.
Por esa razón, hemos enfatizado que además de conse-guir más recursos y buscar soluciones administrativas para dotar de mayor eficiencia al sistema de justicia, “hay que tener presente que en ocasiones el problema de la de-mora es más una cuestión de actitudes, de expectativas in-formales e individuales, o de las mismas prácticas de abo-gados, de jueces o de fiscales”. (Enfasis nuestro.) Hernández Denton, supra, pág. 919. De igual forma, he-mos reconocido que “frecuentemente la mejor forma de combatir la demora judicial es mediante la implantación de cambios en la cultura legal”. (Enfasis nuestro.) Id. La norma ética pautada por la Mayoría en este caso, sin embargo, no promueve los cambios de actitudes o las transfor-maciones en la cultura legal que son necesarios para aten-der el asunto de la demora judicial desde su raíz.
*547 Aún así, conviene aclarar que desde que asumimos la Presidencia del Tribunal Supremo de Puerto Rico, hemos tomado medidas administrativas para aumentar los recur-sos asignados a la función judicial. Además, hemos fomen-tado la agilidad y la eficiencia en el trámite judicial a tra-vés de varias iniciativas jurídicas y administrativas. Hernández Denton, supra, págs. 920-924. Entre los varios proyectos e iniciativas que ya se han implantado, podemos destacar la revisión en los últimos años de las Reglas de Evidencia y las Reglas de Procedimiento Civil por este Tribunal.
Como se sabe, dichas reglas promueven el uso de la tec-nología en los procesos judiciales y contienen disposiciones dirigidas a establecer un sistema integrado y uniforme de administración de casos. Por ejemplo, la nueva Regla 37 de Procedimiento Civil, 32 L.P.R.A. Ap. V, requiere que tanto las partes como los jueces y las juezas manejen de forma más efectiva los calendarios para asegurar el movimiento ágil de los casos en todas las etapas del procedimiento judicial. Además, las referidas reglas modernizaron y flexi-bilizaron nuestro ordenamiento procesal y probatorio al eliminar etapas procesales anacrónicas, acortar varios tér-minos y otorgar mayor flexibilidad a los jueces y a las jue-zas para agilizar los procesos judiciales de manera efi-ciente y diligente.
En atención al mismo objetivo, la Oficina de Adminis-tración de los Tribunales implantó el Sistema Inteligente de Manejo de Casos (“SIMEC”), del programa “Business Intelligence”. En síntesis, este consiste de una herra-mienta especializada para la obtención y el manejo en tiempo real de estadísticas, mediante la cual todos los jue-ces y todas las juezas, por medio de sus computadoras per-sonales, pueden revisar el inventario de casos presentados durante el año fiscal, la relación de casos resueltos durante ese año y una relación histórica —por fecha de presenta-ción hasta el día anterior— de los casos activos que tiene *548 asignado cada juez o jueza. Con dicha herramienta hemos logrado cumplir con la Orden Administrativa OA-JP-2009-118, la cual emitimos para poner en vigor la Obra de Jus-ticia: Plan Estratégico de la Rama Judicial de Puerto Rico 2007-2011, Oficina de Administración de los Tribunales, 2007, y su meta de atender y resolver con rapidez y eficien-cia los asuntos y las controversias que se presentan ante los tribunales del país.(4)
Además, con la herramienta de SIMEC se encamina el desarrollo de un Sistema Unificado de Manejo de Casos (SUMAC), que le permitirá a los jueces y a las juezas de todas las regiones judiciales seguir el tracto procesal de un caso desde que se presenta en los tribunales hasta que fina-liza, mediante alertas e indicadores digitalizados de las eta-pas críticas del proceso y de los términos aplicables. Ello, en conjunción con las notificaciones realizadas mediante el Re-gistro Unico de Abogados y el pago único de aranceles que se hizo viable recientemente mediante Resolución de este Tribunal, facilitará la eventual transición a un sistema de pre-sentación electrónica de documentos en nuestros tribunales. Véase In re Aprobación Der. Arancelarios R.J., 179 D.P.R. 985 (2010); Obra de Justicia: Plan Estratégico de la Rama Judicial de Puerto Rico 2007-2011, supra.
Por otro lado, y con relación a los señalamientos de la opinión per curiam sobre la carga de trabajo y los recursos humanos de nuestros tribunales para justificar o minimi-zar las demoras individuales de algunos jueces y algunas juezas, nótese que según un estudio independiente reali- *549 zado recientemente por el National Center for State Courts, la Rama Judicial de Puerto Rico tenía uno de los niveles de esclarecimiento de casos civiles más altos en Es-tados Unidos. Véase Court Statistics Project, Examining the Work of State Courts: An Analysis of2008 State Court Caseloads, (National Center for State Courts, 2010), pág. 29 (disponible en http://www.ncsconline.org/d_research/ csp/2008_ files/EWSC-2008-Online%20version%20v2.pdf). Dentro de la muestra de varias jurisdicciones estatales que fueron examinadas, Puerto Rico y Wisconsin fueron los únicos sistemas unificados de justicia que en el 2008 sobre-pasaron el 100% de los casos civiles esclarecidos en un año. íd.(5)
Dicho estudio también reflejó que en el Tribunal de Pri-mera Instancia de Puerto Rico había menos casos nuevos asignados por juez o jueza en el 2008 que en las demás jurisdicciones estatales unificadas bajo el escrutinio del National Center for State Courts. Mientras que en un es-tado como Connecticut había un promedio de 2,326 casos nuevos asignados a cada juez o jueza, y en Washington, D.C. había un promedio de 1,968 casos por juez o jueza, en Puerto Rico se le asignó a cada juez o jueza un promedio de 726 casos nuevos. Court Statistics Project, supra, pág. 21.(6) Además, por cada 100,000 habitantes, en Connecticut había 5.1 jueces o juezas, en Washington D.C. había 10.5 jueces o juezas, y en Puerto Rico había 8.2 jueces o juezas.
En abstracción a esa realidad, la opinión per curiam invoca un estudio anterior de esa misma organización, co-misionado por la Oficina de Administración de los Tribuna- *550 les en el 2003, para considerar como un factor relevante en cuanto a la demora imputada en este caso la alegada ca-rencia de jueces y juezas, y de recursos humanos en el Tribunal de Primera Instancia. En particular, la Mayoría cita un artículo del Prof. David Helfeld, en el cual este se re-fiere a dicho estudio para sugerir que nuestros tribunales de instancia no cuentan con suficiente número de recursos humanos, lo cual según ese informe incluía a los jueces y a las juezas, para atender los casos que se presentan en dichos foros. Véase Opinión per curiam, pág. 527, citando a D.M. Helfeld, El seminario sobre la demora judicial: diseño, resultados y recomendaciones, 77 (Núm. 4) Rev. Jur. U.P.R. 891, 897-898 (2008).
Ciertamente, en el referido estudio el National Center for State Courts concluyó que para julio de 2003 había un déficit de 20.46 jueces y juezas en el Tribunal de Primera Instancia de Puerto Rico. Véase National Center for State Courts, Workload Assessment Model for the Puerto Rico Superior Court, Final Report, Court Services Division, Denver, 2003, pág. 22. Sin embargo, la opinion “per cu-riam” no toma en consideración que, precisamente a la luz de las recomendaciones de ese mismo estudio, la Asamblea Legislativa aprobó un aumento que sobrepasó esa cantidad recomendada en cuanto al número de jueces y juezas supe-riores que componen el Tribunal de Primera Instancia. Es-pecíficamente, la Ley de Judicatura del Estado Libre Aso-ciado de Puerto Rico del 2003 dispuso para la creación de 30 vacantes adicionales de jueces y juezas superiores en el Tribunal de Primera Instancia. Véase Art. 5.002 de la Ley Núm. 201, supra, 4 L.P.R.A. sec. 25b.(7)
*551 Por lo anterior, es obvio que la tesis central de la Opi-nión del Tribunal se basa en estadísticas obsoletas y conjeturales. La realidad empírica claramente es otra, pues el informe del National Center for State Courts citado por el profesor Helfeld en su artículo, y al cual se refiere la Mayoría para justificar esta decisión, se utilizó particular-mente para fundamentar un aumento en la plantilla de Jueces y Juezas Superiores que constituyen el Tribunal de Primera Instancia. Más aún, ese aumento en la plantilla de Jueces y Juezas Superiores promulgada por la Asam-blea Legislativa fue efectiva para atender el asunto de la demora judicial en términos generales, según surge de las estadísticas antes citadas del National Center for State Courts del 2008.
En esta ocasión, no puede haber duda que la normativa pautada por el Tribunal podría tener repercusiones nega-tivas para la administración ágil y eficiente de los procesos judiciales y de la justicia. Increíblemente, la Mayoría sus-tenta esta normativa en un artículo del ex decano Helfeld para permitir y promover precisamente lo que el distin-guido letrado le ha preocupado por tantos años y que, en esencia, recoge la frase popular: justicia lenta no es justicia. Al sustraer de todo contenido al Canon 17 de Ética Judicial, supra, se concede, para todos lo efectos prácticos, una inmunidad indebida para los jueces y las juezas que se tarden de manera excesiva y negligente en resolver los ca-sos asignados a sus salas. En vista de ello, nos vemos obli-gados a disentir de la norma pautada por la mayoría en este caso.
*552 IV
Aunque en el procedimiento disciplinario de epígrafe no se presentó prueba de motivaciones indebidas que causa-ran la demora de la jueza Pagani Padró de dictar sentencia en Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, esa realidad no es suficiente para demostrar que ésta fue diligente en la administración judicial del re-ferido caso al amparo del referido Canon 17. Tampoco de-muestra que la jueza Pagani Padró cumplió con el Canon 4 de Etica Judicial, supra, el cual dispone que todos los jue-ces y todas las juezas están obligados y obligadas a cumplir de manera cuidadosa y diligente con “las obligaciones ad-ministrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial”. 4 L.P.R.A. Ap. IV-B, C. 4.
No olvidemos que como el proceso judicial en controver-sia se dilucidó en el Tribunal de Primera Instancia, aplica el término dispuesto en la Regla 24(a) para la Administra-ción del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, supra, de noventa días para que los jueces y las juezas resuelvan los casos contenciosos desde la fecha en que estos fueron sometidos para su adjudicación. Id. Además, dicha regla establece que el tér-mino de noventa días podría extenderse de manera razo-nable sólo cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario, por lo que habría que evaluar la totalidad de las circunstancias de ese caso para determinar si la demora de diez años para dictar sentencia en Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, fue objetivamente razonable.
Tras evaluar todas las circunstancias del caso, somos del criterio que a la luz de la normativa deontológica antes expuesta, la tardanza objetiva en la resolución de ese caso apuntaría hacia una infracción a los Cánones 4 y 17 de Etica Judicial, supra. Ya que la jueza Pagani Padró incluso aceptó en el procedimiento de epígrafe que no fue razona- *553 ble el término de diez años que tardó en dictar sentencia en Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, luego de estar sometido el caso, resulta for-zoso concluir que esta violó la Regla 24(a) para la Adminis-tración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, supra, lo cual incidiría directa-mente sobre la conducta proscrita por los Cánones 4 y 17 de Etica Judicial, supra.
A pesar de lo antes expuesto, concurrimos con el Tribunal en cuanto éste determina desestimar la querella de epígrafe. Pero a diferencia de la Mayoría, entendemos que ese curso de acción procedía a la luz del buen historial de la jueza Pagani Padró en la Judicatura y el carácter novel de este caso, y no porque entendiéramos que sería impropio disciplinar a un miembro de la Judicatura por una dilación negligente en la solución de un caso ante su consideración.
Este Tribunal nunca se había expresado sobre el alcance de los Cánones de Etica Judicial con relación a una queja sobre una demora excesiva en resolver un caso, por lo que hubiésemos pautado la norma antes expuesta de manera prospectiva. Además, coincidimos con la mayoría en que las partes afectadas por la demora en ese caso no utiliza-ron plenamente los remedios disponibles durante el proce-dimiento judicial para insistir o compeler a que la jueza querellada dictara sentencia en un término razonable.(8)
Por último, y a pesar de que la jueza Pagani Padró ha-bía sido relevada de sala en varias ocasiones como conse-cuencia del cúmulo de su trabajo, se debe reconocer que *554 esta jueza .tiene un historial de servicio en la Rama Judicial de alrededor de veintiún años, en los cuales ha demos-trado vocación, compromiso y dedicación a la Judicatura. Durante esos años su desempeño judicial le mereció una calificación muy buena de la Comisión de Evaluación Judicial. Asimismo, se debe tomar en cuenta como ate-nuante que la jueza Pagani Padró reconoció que la demora fue irrazonable y que se trató de una situación que no se repetirá. Por estas razones, concurrimos con la determina-ción del Tribunal de archivar la querella de epígrafe.
V
En atención a lo anterior, disentimos de la norma pau-tada por la Opinión per curiam, pero concurrimos con la determinación de archivar la querella de epígrafe.

 Speech in House of Commons, British Parliament, 16 de marzo de 1868, en The Yale Booh of Quotations, (F. Shapiro, ed.), New Haven and London, Yale University Press, pág. 312.

 De modo similar, el Canon Modelo 3(8) de 2007 disponía: “[a] judge shall dispose of all judicial matters promptly, efficiently and fairly.” Véase Model Code of Judicial Conduct, Center for Professional Responsability, American Bar Association, disponible en http://www.americanbar.org/groups/professional_responsibility/ publications/model_code_of_judicial_conduct/ model_code_of_judicial_conduct_ canon_3.html (última vista, 3 de febrero de 2011). Por su parte, los comentarios de esa edición expresaban lo siguiente:
“In disposing of matters promptly, efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. Containing costs while preserving fundamental rights of parties also protects the interests of witnesses and the general public. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs. Ajudge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.
“Prompt disposition of the court’s business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants and their lawyers cooperate with the judge to that end.” id.

 Real Academia Española, Diccionario de la Lengua Española, 22da ed., en http://buscon.rae.es/draeI/SrvltConsulta?TIPO_BUS=3&LEMA=negligencia (última visita, 2 de febrero de 2011).

 Mediante esa Orden Administrativa, ordenamos a todas las secretarías del Tribunal de Primera Instancia y del Tribunal de Apelaciones que notificaran una relación de los casos de naturaleza civil que no hubiesen recibido una determinación final en el término de dos años de presentados. Además, se dispuso que los jueces administradores y las juezas administradoras dictarán las órdenes necesarias para la solución justa, rápida y eficiente de los casos. Entre las medidas mencionadas, se incluyó “proveer mecanismos y herramientas, así como el apoyo del recurso humano y técnico necesario, dirigido a aquellos jueces y juezas que puedan requerir asisten-cia para la disposición de los casos presentados”. OA-JP, 2009-118, res. el 30 de octubre de 2009, pág. 2.

 Según el referido estudio, esa estadística se calcula al dividir el número de casos resueltos o inactivos por el número de casos nuevos presentados, reabiertos o reactivados. Court Statistics Project, Examining the Work of State Courts: An Analysis of2008 State Court Caseloads (National Center for State Courts, 2010), pág. 29 (disponible en http://www.ncsconline.org/d_research/csp/2008_ files/EWSC-2008-Online%20version%20v2.pdf)

 Estas estadísticas excluyen los casos relacionados con las infracciones de tránsito en todas las jurisdicciones mencionadas.

 El Plan de Reorganización de la Rama Judicial de 1994 dispuso que el Tribunal de Primera Instancia se debía constituir de un máximo de doscientos veinti-trés Jueces y Juezas Superiores y ciento cinco Jueces Municipales. Véase Art. 5.002 de la Ley Núm. 1 de 28 de julio de 1994, según enmendada, 4 L.P.R.A. ant. sec. 22n. Por otro lado, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 dispuso que el Tribunal de Primera Instancia quedaría constituido por doscien- *551 tos cincuenta y tres Jueces y Juezas Superiores y ochenta y cinco Jueces Municipales. 4 L.P.R.A. sec. 25b.

 Resulta ilustrativo que no fue hasta ocho años después de que el caso quedó sometido en los méritos que el abogado de la parte demandante presentó una moción ante el Tribunal de Primera Instancia para alertarle de que aún no había dictado sentencia. Además, las partes tampoco presentaron un recurso de mandamus para que se le ordenara a la jueza querellada que dictara sentencia en el caso en contro-versia y que cumpliera con la Regla 24(a) para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II-B. Véase Purcell Ahmed v. Pons Núñez, 129 D.P.R. 711 (1992). Como reconoce la Opi-nión per curiam, no fue sino hasta que la jueza Pagani Padró dictó sentencia me-diante la cual se desestimó la mencionada demanda quelos demandantes decidieron instar la queja de autos.